# In the United States Court of Federal Claims

No. 17-362

Filed: July 24, 2017*

| | | |
|---|---|---|
| ***************************************** | | |
| AMERICAN SANITARY PRODUCTS, INC., | * | Administrative Procedures Act ("APA"), |
| | * |    5 U.S.C. § 706; |
| Plaintiff, | * | Bid Protest Jurisdiction, 28 U.S.C. § 1491; |
| | * | Bid Protest Regulations, 4 C.F.R. § 21.3; |
| v. | * | Competition In Contracting Act ("CICA"), |
| | * |    10 U.S.C. § 2305, 31 U.S.C. § 3551; |
| THE UNITED STATES, | * | Federal Acquisition Regulation ("FAR"), |
| | * |    48 C.F.R. §§ 8.402, 8.405-3, 15.303, |
| Defendant, | * |    38.101; |
| | * | Freedom Of Information Act ("FOIA"), |
| and | * |    5 U.S.C. § 552; |
| | * | Rules of the United States Court of Federal |
| NATIVE GREEN, LLC, | * |    Claims ("RCFC") 52.1. |
| | * | |
| Defendant-Intervenor. | * | |
| | * | |
| ***************************************** | | |

**Ralph C. Thomas, III**, Law Office of Ralph C. Thomas III PLLC, Washington, D.C., Counsel for Plaintiff.

**Sarah Choi**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Joseph J. Petrillo**, Petrillo & Powell, Washington, D.C., Counsel for the Defendant-Intervenor.

### MEMORANDUM OPINION AND ORDER RESOLVING CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND MOTIONS TO SUPPLEMENT THE ADMINISTRATIVE RECORD

**BRADEN**, *Chief Judge*.

    \* On July 17, 2017, the court forwarded a sealed copy of this Memorandum Opinion And Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that required correction. The parties had until July 24, 2017, to file any proposed redactions or revisions. The parties did not propose any redactions.

I.       **FACTUAL BACKGROUND.**[1]

On September 9, 2016, the Federal Bureau of Prisons (the "BOP") posted Request For Quotations No. RFQP0700NAS160891 (the "Solicitation") on the General Service Administration's ("GSA") eBuy website,[2] wherein the BOP announced the intention to establish a small business set aside for the purchase of "Safer Choice"[3] solid laundry products.  AR Tab 4, at 17–18.  The Solicitation anticipated a single award Blanket Purchase Agreement ("BPA") with firm-fixed prices for one base year, four one-year option periods, and an additional six-month option period, to be awarded to the lowest priced, technically acceptable offeror.  AR Tab 4, at 21–24, 54.  The Solicitation also provided that the BPA was to be made according to GSA Federal Supply Schedule ("FSS") category 375 and the awardee's respective GSA Schedule Contract.[4]  AR Tab 4, at 18.  The Solicitation also required that "[a]ll solicited products must be on [the offeror's] GSA Schedule and hold EPA's 'Safer Choice' certification by the close of the [S]olicitation." AR Tab 4, at 24.

---

[1] The facts discussed herein were derived from the April 5, 2017 Administrative Record ("AR Tabs 1–24," at 1–557).

[2] GSA's eBuy is an electronic "Request for Quote (RFQ)/Request for Proposal (RFP) system designed to allow government buyers to request information, find sources, and prepare RFQs/RFPs, online, for millions of services and products offered through GSA's Multiple Award Schedule (MAS) and GSA Technology Contracts. Government buyers can use eBuy to obtain quotes or proposals for services, large quantity purchases, big ticket items, and purchases with complex requirements."  GSA eBuy Home Page, https://www.ebuy.gsa.gov/advantage/ebuy/start_page.do (last visited July 17, 2017).

[3] The United States Environmental Protection Agency's (the "EPA") "Safer Choice" program establishes an inspection system whereby certain products are labeled as a "Safer Choice;" products that have a "Safer Choice" label are inspected by EPA scientists to ensure that all product ingredients are as safe as possible, without sacrificing functionality.  EPA's SAFER CHOICE STANDARD vi–ix (2015), *available at* https://www.epa.gov/sites/production/files/2013-12/documents/standard-for-safer-products.pdf.

[4] The GSA's Federal Supply Schedule program "provides Federal agencies with a simplified process of acquiring commercial supplies and services in varying quantities while obtaining volume discounts."  48 C.F.R. § 38.101(a); *see also* 48 C.F.R. § 8.402(a) (same).  Under this program, the GSA awards indefinite delivery, indefinite quantity contracts, known as "GSA Schedule Contracts," wherein firms contract to provide certain products at stated prices for given periods of time.  *See* 48 C.F.R. § 38.101(a), (d); *see also* 48 C.F.R. § 8.402(a) (same).  These contracts require schedule contractors to publish an "Authorized Federal Supply Schedule Pricelist," that contains all products offered by the schedule contractor.  *See* 48 C.F.R. § 8.402(b).  In addition, the GSA offers an online shopping service called "GSA Advantage!," through which federal agencies may order products listed on each contractor's schedule.  *See* 48 C.F.R. § 8.402(c)(1).

2

To facilitate the Contracting Officer's (the "CO") evaluation of the price factor, the Solicitation required each offeror to submit a "price chart," wherein it would calculate a price per case, based upon the amount of laundry product required to clean 100 pounds of laundry ("CWT").[5] AR Tab 4, at 58–59. The formula used to calculate this price per case was:

> (price per ounce of product) x (ounces per CWT) x (CWT per case) =  price per case.

AR Tab 4, at 58.

Each offeror's price would be evaluated for the one-year base period and all the option periods. AR Tab 4, at 58. In addition, the Solicitation included a "Schedule Of Supplies/Services" providing a table with estimated quantities of each laundry product in pounds for the base year and four one-year options, i.e., (1) 24,000 pounds of detergent per year; (2) 10,000 pounds of breaks and builders per year; (3) 5,000 pounds of sours and softeners per year; and (4) 10,000 pounds of stain removers per year. AR Tab 4, at 21–24.

The original deadline for the receipt of quotations was September 16, 2016, but that deadline was extended to September 26, 2016. AR Tab 2, at 12. American Sanitary Products, Inc. ("American Sanitary") and Native Green, LLC ("Native Green") were the only offerors that responded to the Solicitation. AR Tab 7, at 111 (American Sanitary's quote); AR Tab 8, at 257 (Native Green's quote). Each offeror indicated that it sold Safer Choice products that were available on the current GSA Schedule. AR Tab 7, at 112 (American Sanitary); AR Tab 8, at 306 (Native Green).

On November 2, 2016, the BOP's Technical Evaluation Panel (the "TEP") and the CO reviewed both quotes and determined that they were technically acceptable. AR Tab 2, at 12. Next, the CO performed a price evaluation, by multiplying the evaluation price provided by the estimated volume for the base year, the four option years, and the six month extension period. AR Tab 12, at 390–93. American Sanitary was evaluated as the technically acceptable offeror with the lowest price. AR Tab 2, at 13. After making this determination, the CO checked the website "GSA Advantage!" to determine whether federal agencies could order American Sanitary's products there, pursuant to American Sanitary's GSA Schedule Contract; but, the CO did not check whether Native Green's products were offered through that website. AR Tab 2, at 12.

On December 1, 2016, the BOP awarded BPA No. DJBP0700NASBPA142 to American Sanitary; the BOP set aside $11,908,882.50 to pay for laundry products, based on the assumption that American Sanitary would perform during both the base year and the option periods. AR Tab 13, at 396.

On December 15, 2016, Native Green filed a protest with the Government Accountability Office (the "GAO"), alleging that the BOP's estimate quantities were

---

[5] CWT was the Solicitation's abbreviation for "hundredweight," equal to 100 pounds of laundry. AR Tab 4, at 58.

3

grossly underestimated in the Solicitation and prejudiced Native Green's pricing. AR Tab 14, at 426. On December 15, 2016, the BOP sent a "Notification Of Agency Protest" to inform American Sanitary that contract performance was suspended pending disposition of "the protest," but did not indicate that Native Green's protest was before the GAO. AR Tab 16, at 434.

After reviewing Native Green's protest, the BOP determined that the contract award did not accurately reflect the BOP's requirements as stated in pounds, since the CO assumed that each case of product weighed two pounds; the actual weight of the cases, however, could range between five and sixteen pounds. AR Tab 2, at 14. On January 12, 2017, the CO issued a Corrective Action Memo, announcing that the best course was corrective action to cancel the contract award and resolicit the contract, to clarify the estimated quantities required to meet the BOP's requirements. AR Tab 17, at 435.

On that same day, the BOP canceled the Solicitation and contract award to American Sanitary. AR Tab 2, at 14. On January 13, 2017, the BOP informed American Sanitary that the Solicitation and the December 7, 2016 Contract were canceled. AR Tab 19, at 443 (cancellation of Contract); AR Tab 20, at 446 (cancellation of Solicitation). On that same day, the GAO dismissed Native Green's protest as "academic." AR Tab 21, at 449.

On January 23, 2017,[6] American Sanitary filed a protest at the GAO, alleging that the December 1, 2016 contract award should be reinstated, because the BOP failed to give any rational basis for cancellation of the award and Native Green was technically non-compliant with the Solicitation. AR Tab 24, at 463.

On February 6, 2017, American Sanitary filed a supplemental protest at the GAO, wherein it alleged that the BOP failed to provide adequate notice of Native Green's December 15, 2016 GAO protest and Native Green did not have standing to file the December 15, 2016 protest. AR Tab 25, at 510. On February 22, 2017, the BOP filed an agency report with the GAO, wherein it requested that the GAO dismiss American Sanitary's protest, because corrective action was required to ensure that the Solicitation accurately reflected the BOP's requirements. AR Tab 1, at 1. On March 10, 2017, the GAO dismissed American Sanitary's protests, for failure to respond to the BOP's agency report by the due date, *i.e.*, by March 6, 2017, at 5:30 PM. AR Tab 28, 555–57.

## II.  PROCEDURAL HISTORY.

On March 17, 2017, American Sanitary filed a Complaint ("Compl."), under seal, in the United States Court of Federal Claims. ECF No. 1. Count One alleged that the BOP's decision to take corrective action lacked a rational basis and was therefore arbitrary, capricious, and contrary to law. Compl. ¶¶ 28–29. Count Two alleged that the BOP

---

[6] Although American Sanitary's protest was dated January 21, 2017, it was not filed until January 23, 2017. AR Tab 2, at 14.

violated section 2305(b)(1) of the Competition In Contracting Act ("CICA"),[7] and section 15.303(b)(4) of the Federal Acquisition Regulation ("FAR"),[8] when it determined that Native Green was technically capable. Compl. ¶¶ 31–32. On that same day, this case was assigned to the Honorable Nancy B. Firestone. ECF No. 2. Also on that same day, American Sanitary filed a Motion For Protective Order And For Expedited Production Of The Administrative Record. ECF No. 7.

* * *

On March 20, 2017, the case was reassigned to the undersigned judge. ECF No. 12. On that same day, the court convened a telephone status conference, and ordered the Government to provide, in writing, confirmation that the BOP would not issue a new solicitation until the court adjudicated this bid protest. ECF No. 17.

On March 30, 2017, Native Green filed a Motion To Intervene, pursuant to Rule 24(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), that was granted by the court on March 31, 2017. ECF Nos. 21, 22.

On April 4, 2017, the Government filed a Notice Regarding Stay Of Re-Solicitation, together with the April 4, 2017 Declaration of the CO ("4/4/17 CO Decl."), wherein the CO stated that the BOP was committed to stay re-solicitation of the contract, until the court adjudicated American Sanitary's bid protest. 4/4/17 CO Decl. ¶¶ 6–7.[9] On April 5, 2017, the Government filed the Administrative Record. ECF No. 27. On April 6, 2017, the court entered a Protective Order. ECF No. 28. On April 24, 2017, American Sanitary filed a Motion For Judgment On The Administrative Record, together with a Memorandum Of Law In Support ("Pl. Mot."). ECF Nos. 32, 33.

On May 12, 2017, Native Green filed a Motion For Judgment On The Administrative Record, together with a Memorandum Of Points And Authorities In Support ("Def. Int. Mot."). ECF Nos. 36, 37. On that same day, Native Green also filed a Motion To Supplement The Administrative Record, together with a Memorandum Of Law In Support ("Def. Int. Mot. Supp."), and the May 3, 2017 Declaration of Marc L. Rubenstein ("5/3/17 Rubenstein Decl."). ECF Nos. 34, 35. Mr. Rubenstein is the President of ProGov Solutions, LLC ("ProGov"), a company that provides contract management services for Native Green. 5/3/17 Rubenstein Decl. ¶ 2. Native Green requested to

---

[7] Section 2305(b)(1) of the CICA provides that "[t]he head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation." 10 U.S.C. § 2305.

[8] Section 15.303(b)(4) of the FAR provides that "[t]he source selection authority shall ensure that proposals are evaluated based solely on the factors and subfactors contained in the solicitation[.]" 48 C.F.R. § 15.303(b)(4).

[9] The CO also advised the court that the BOP would inform the court if it became necessary for the BOP to resolicit the contract prior to the resolution of this bid protest. 4/4/17 CO Decl. ¶ 6.

5

supplement the Administrative Record with four additional items: (1) a September 15, 2016 e-mail from the GSA to ProGov regarding modifications to Native Green's GSA Schedule Contract; (2) a September 15, 2016 Modification of Native Green's GSA Schedule Contract; (3) a July 1, 2016 Native Green Price List; and (4) a September 15, 2016 e-mail from the GSA to ProGov stating that the modification to Native Green's GSA Schedule Contract had been signed. ECF No. 35.

On May 19, 2017, the Government filed a Motion For Judgment Upon The Administrative Record And Opposition To Plaintiff's Cross-Motion For Judgment Upon The Administrative Record ("Gov't Mot."). ECF No. 38.

On May 31, 2016, American Sanitary filed a Memorandum Of Law In Support Of Its Reply To Government-Defendant's And Intervenor-Defendant's Opposition To Plaintiff's Motion For Judgment On The Administrative Record And To Government-Defendant's And Defendant-Intervenor's Cross-Motions For Judgment On The Administrative Record ("Pl. Resp."). ECF No. 41.

On June 6, 2017, American Sanitary filed a Motion To Supplement Administrative Record with five additional items: (1) a May 11, 2015 letter from American Sanitary's counsel to the BOP, wherein American Sanitary attempted to intervene in an agency protest; (2) a May 12, 2015 letter from a BOP CO, informing American Sanitary's counsel that the BOP did not allow intervention in bid protests before the agency; (3) a record of the BOP's detergent use for the past five years; (4) a January 16, 2017 screenshot from the GSA Advantage! website; and (5) a May 26, 2017 screenshot from the GSA Advantage! website, together with a Memorandum Of Points And Authorities In Support ("Pl. Mot. Supp."). ECF No. 48.

On June 9, 2017, Native Green filed a Reply To Plaintiff's Response To Cross-Motion For Judgment On The Administrative Record ("Def. Int. Reply."). ECF No. 50. On that same day, the Government filed a Reply In Support Of Its Motion For Judgment Upon The Administrative Record ("Gov't Reply"). ECF No. 51. On June 14, 2017, American Sanitary filed a Motion For Leave To File Sur-Reply, together with a proposed Sur-Reply. ECF No. 52.

On June 23, 2017, the Government filed an Opposition to American Sanitary's June 6, 2017 Motion To Supplement The Administrative Record ("Gov't Opp."). ECF No. 54. On that same day, Native Green filed an Intervenor's Opposition To Plaintiff's Motion To Supplement The Administrative Record And Plaintiff's Motion To File A Sur-Reply ("Def. Int. Opp."). ECF No. 55.

On June 29, 2017, American Sanitary filed a Reply To Government's Opposition To Plaintiff's Motion To Supplement Administrative Record ("Pl. Reply Supp."). ECF No. 58.

On July 3, 2017, the Government filed a Response to American Sanitary's June 14, 2017 Motion For Leave To File Sur-Reply, wherein the Government argued that American Sanitary did not show any reason to continue briefing this case. ECF No. 59. On that same

day, American Sanitary filed a Reply to the Government's June 23, 2017 Opposition to American Sanitary's June 6, 2017 Motion To Supplement The Administrative Record. ECF No. 60.  On July 4, 2017, American Sanitary filed a Reply to the Native Green's June 23, 2017 Opposition to American Sanitary's June 6, 2017 Motion To Supplement The Administrative Record.  ECF No. 61.

On July 10, 2017, American Sanitary filed a Reply To Government's Opposition To Plaintiff's Motion For Leave To File Sur-Reply.  ECF No. 64.  On July 12, 2017, the court denied American Sanitary's June 14, 2017 Motion For Leave To File Sur-Reply.  ECF No. 65.

### III.  DISCUSSION.

#### A.  Jurisdiction.

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*.

28 U.S.C. § 1491(b)(1) (emphasis added).

Count One of the March 17, 2017 Complaint alleges that the BOP's decision to take corrective action and cancel both the Solicitation and the contract award was arbitrary, capricious, and contrary to law. Compl. ¶ 29.  Count Two alleges that the BOP's decision to take corrective action violated section 2305(b)(1) of the CICA and FAR 15.303(b)(4). Compl. ¶¶ 31–32.  The United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has jurisdiction to adjudicate challenges to corrective action, pursuant to the Tucker Act's grant of bid protest jurisdiction.  *See Sys. Application & Tech., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) ("This court has made clear that bid protest jurisdiction arises when an agency decides to take corrective action even when such action is not fully implemented."); *see also Res. Conservation Grp. v. United States*, 597 F.3d 1238, 1244 (Fed. Cir. 2010) (holding that the Tucker Act grants the United States Court of Federal Claims jurisdiction to adjudicate bid protests at "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout").

For these reasons, the court has determined that it has jurisdiction to adjudicate the claims alleged in the March 17, 2017 Complaint.

#### B.  Standing.

As a threshold matter, a plaintiff contesting the award of a federal contract must establish that it is an "interested party" to have standing under 28 U.S.C. § 1491(b)(1).  *See*

7

*Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue."). The United States Court of Appeals for the Federal Circuit has construed the term "interested party" under 28 U.S.C. § 1491(b)(1) as synonymous with "interested party," as defined by the CICA, 31 U.S.C. § 3551(2)(A). *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing decisions adopting the CICA definition of "interested party" for 28 U.S.C. § 1491(b)(1) purposes). A two-part test is applied to determine whether a protestor is an "interested party:" (1) the protestor must show that it was an actual or prospective bidder or offeror; and (2) the protestor must have a direct economic interest in the procurement or proposed procurement. *See Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008).

In addition to establishing "interested party" status, a protestor must show that the alleged errors in the procurement were prejudicial. *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("It is basic that because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.") (internal quotations omitted); *see also Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing."). A protestor demonstrates prejudice when "it can show that but for the error, it would have had a substantial chance of securing the contract." *Labatt*, 577 F.3d at 1378. Importantly, a proper standing inquiry must not conflate the requirements of "direct economic interest" and prejudicial error. *Id.* at 1380 (explaining that examining economic interest but excluding prejudicial error from the standing inquiry "would create a rule that, to an unsuccessful but economically interested offeror in a bid protest, any error is harmful").

In this case, American Sanitary was an actual bidder, and it has a direct economic interest in the procurement, because the BOP awarded American Sanitary with the BPA contract on December 1, 2016. AR Tab 12, at 13–19. Therefore, American Sanitary has established that it is an "interested party." *See* 28 U.S.C. § 1491(b)(1).

American Sanitary also has established that it was prejudiced by the BOP's decision to cancel the December 1, 2016 BPA contract and take corrective action. The United States Court of Appeals for the Federal Circuit has held that "[a]n arbitrary decision to take corrective action without adequate justification forces a winning contractor to participate in the process a second time and constitutes a competitive injury to that contractor." *See Sys. Application*, 691 F.3d at 1382. In this case, American Sanitary's March 17, 2017 Complaint alleges that the BOP's corrective action was arbitrary, capricious, and contrary to law. Compl. ¶¶ 28–32.

For these reasons, the court has determined that American Sanity has standing to request adjudication of the claims alleged in the March 17, 2017 Complaint.

### C. Standard Of Review.

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), Congress authorized the United States Court of Federal Claims to adjudicate bid protests under the standards set

forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *Banknote Corp. of Supp., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted).

As the United States Court of Appeals for the Federal Circuit has held, the court's primary responsibility in a bid protest is to determine whether a federal agency violated a federal statute or regulation in the procurement process and whether any such violation was prejudicial. *See Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (holding that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations") (internal quotation marks and citations omitted).

If no prejudicial violation of law or regulation is found, the court next is required to determine whether the agency decision evidences a rational basis. *See Savantage Fin. Servs. Inc. v. United States*, 595 F.3d. 1282, 1286 (Fed. Cir. 2010) (holding that a court "must sustain an agency action unless the action does not evidence rational reasoning and consideration of relevant factors") (quotations omitted); *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001) (holding that to meet the burden of showing that a sole-source award lacks rational basis, the plaintiff must show: "(1) the agency's decision to conduct a sole-source procurement process lacked a rational basis; (2) the agency's sole-source requirements lacked a rational basis; or (3) based on the sole-source requirements, the selection of the sole-source awardee lacked a rational basis").

Finally, the court is required to ascertain whether the federal agency otherwise acted in an arbitrary and capricious manner with respect to the procurement at issue. *See Banknote Corp.*, 365 F.3d at 1350 (holding that an agency action should be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"). In particular, the United States Supreme Court has held that a federal agency's decision is arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

### D.     The Parties' Motions For Judgment On The Administrative Record.

#### 1.     Plaintiff's Motion For Judgment On The Administrative Record.

American Sanitary argues that the BOP's corrective action, *i.e*., canceling the Solicitation and American Sanitary's BPA award, lacked a rational basis, because Native

9

Green was not technically capable of performance and could not have been prejudiced by the award to American Sanitary.[10] Pl. Mot. at 22–23. The Solicitation expressly required "all solicited products" to be on the offerors' GSA Schedule Contracts. Pl. Mot. at 23 (quoting AR Tab 4, at 48). In addition, when an agency announces an intention to order from an existing GSA Schedule contractor, all items ordered must be within the scope of that contractor's GSA Schedule Contract. Pl. Mot. at 23–24 (citing *Tarheel Specialties, Inc.*, B–298197 *et al*, 2006 WL 2820577 at *3 (July 17, 2006)).

A post-award review of the GSA Advantage! website, however, evidenced that Native Green had only one solid laundry product available on the GSA Schedule, but the Solicitation requested four. Pl. Mot. at 24. Because the Solicitation required "all solicited products" to be on the offeror's GSA Schedule, Native Green was not technically compliant and ineligible for award. Pl. Mot. at 23–24.

In addition, contrary to federal regulations, the BOP did not inform American Sanitary that Native Green filed a GAO bid protest. Pl. Mot. at 25 (citing 4 C.F.R. § 21.3(a)).[11] If the BOP notified American Sanitary of Native Green's bid protest, American Sanitary would have filed a Request for Dismissal as Native Green was a non-interested party. Pl. Mot. at 25. Moreover, American Sanitary informed the BOP that Native Green was not technically compliant when American Sanitary filed a January 23, 2017 GAO bid protest. Pl. Mot. at 25. But, even with this knowledge, the BOP arbitrarily decided to resolicit the contract. Pl. Mot. at 25.

Assuming that Native Green was technically compliant, the BOP's corrective action is not targeted at the alleged defect. Pl. Mot. at 26. Native Green's concern with the Solicitation was that it "grossly understated" the amount of detergent required. Pl. Mot. at 26 (citing AR Tab 14, at 429). The BOP, however, did not calculate the evaluation price by the amount of detergent that the BOP estimated for each year; instead, the BOP calculated the evaluation price by measuring how many 100 pound loads of laundry ("CWT") the agency would get from one case of product, *i.e.*, price per ounce of product

---

[10] Native Green was the only other offeror. AR Tab 2, at 12.

[11] Section 21.3(a) of the Bid Protest Regulations provides that:

> The agency shall immediately give notice of the protest to the contractor if award has been made or, if no award has been made, to all bidders or offerors who appear to have a substantial prospect of receiving an award. The agency shall furnish copies of the protest submissions to those parties, except where disclosure of the information is prohibited by law, with instructions to communicate further directly with GAO. All parties shall furnish copies of all protest communications to the agency and to other participating parties. All protest communications shall be sent by means reasonably calculated to effect expeditious delivery.

4 C.F.R. § 21.3(a).

x ounce per CWT x CWT per case. Pl. Mot. at 26 (citing AR Tab 2, at 13). The BOP elected to buy cases based on which product could launder the most loads at the lowest price. Pl Mot. at 27. Therefore, it was the price per ounce submitted by the offerors, not the estimated requirements in the Solicitation, that determined the lowest price per the formula used by the BOP. Pl. Mot. at 27. Therefore, American Sanitary would still be the lowest offeror, based upon the BOP's formula, even if the BOP changed the estimated requirements. Pl. Mot. at 27.

As such, Native Green could not have been prejudiced by the BOP's award to American Sanitary. Pl. Mot. at 27. In contrast, American Sanitary has suffered both harm and prejudice as a result of the BOP's arbitrary decision to take corrective action; American Sanitary has lost an award and is being forced to participate in the quote evaluation process a second time. Pl. Mot. at 27–30. In the absence of an injunction barring the BOP from resoliciting the contract, American Sanitary's harm is irreparable. Pl. Mot. at 34–36. This case also meets the other criteria for injunctive relief, *i.e.*, an injunction would be in the public interest and the harm to American Sanitary, in the absence of an injunction, outweighs any harm suffered by the Government if an injunction was entered. Pl. Mot. at 33–38.

### 2. The Government's Cross-Motion For Judgment On The Administrative Record.

The Government responds that the BOP's decision to take corrective action by canceling American Sanitary's BPA award and resoliciting the contract was reasonable, because Native Green's December 15, 2016 bid protest informed the BOP of the significant error in the Solicitation. Gov't Mot. at 13. The Solicitation did not accurately describe the quantities of laundry product required to run the BOP's correctional facilities; the actual amount of the BOP's requirements likely was five to ten times greater than that estimated in the Solicitation. Gov't Mot. at 13–14. The BOP's decision to take corrective action and cancel the Solicitation was therefore reasonable. Gov't Mot. at 14.

The Government adds that the BOP's corrective action was not arbitrary, capricious, or contrary to law. Gov't Mot. at 14–20. Whether Native Green was eligible for the December 1, 2016 contract award does not change the fact that there were errors in the Solicitation that the BOP needed to address by corrective action. Gov't Mot. at 14. In addition, regardless of the BOP's mistake in labeling Native Green's GAO bid protest as an agency protest, information about Native Green's GAO protest was publicly available. Gov't Mot. at 16. Moreover, the disclosure of American Sanitary's "lowest price quote" to Native Green does not impose a substantial disadvantage on American Sanitary, because the estimates in the new solicitation will render previously submitted price information irrelevant. Gov't Mot. at 16. In fact, FAR 8.405-3(b)(2)(iii) requires federal agencies to issue solicitations that accurately reflect the agencies' requirements, so

11

the original Solicitation was not in compliance with FAR 8.405-3(b)(2)(iii).[12] Gov't Mot. at 17–18.

For these reasons, the Government argues that American Sanitary is not entitled to permanent injunctive relief. Gov't Mot. at 20.

### 3. Defendant-Intervenor's Motion For Judgment On The Administrative Record.

Native Green adds that American Sanitary's contention that Native Green was not technically capable is "simply wrong." Def. Int. Mot. at 4. It is true that the Solicitation required that all offered products be on the offerors' GSA Schedule Contracts, prior to submission of quotes. AR Tab 4, at 24. For this reason, Native Green seeks to supplement the Administrative Record to add a September 15, 2016 Contract Modification that demonstrates that Native Green's GSA Schedule Contract was modified to include the offered products *prior* to the submission of Native Green's September 26, 2016 quote. Def. Int. Mot. at 4; *see also* Def. Int. Mot. Supp. at 1. Although American Sanitary argues that these products were not available to be ordered on the GSA Advantage! website on September 26 2016, nevertheless Native Green's GSA Schedule *Contract* included the products, as required by the Solicitation. Def. Int. Mot. at 5.

In any event, the BOP's decision to take corrective action was reasonable under the circumstances, because of the "significant shortfall" between the estimated quantities in the Solicitation and the BOP's actual requirements. Def. Int. Mot. at 7. Although American Sanitary argues that the estimated quantity did not affect each offeror's price, this argument is contrary to common sense, because offerors could quote a lower price-per-case if they expected to sell a large quantity of product. Def. Int. Mot. at 8. Native Green quoted a high price, because of the significant startup costs involved in providing laundry detergent products to the BOP's 122 facilities; if the BOP provided a higher estimated quantity, Native Green could have more accurately amortized startup costs over a much larger quantity of products, resulting in a lower price. Def. Int. Mot. at 8–9. In addition, FAR 8.405-3(e) requires federal agencies to take action to obtain a better price, when they discover that they incorrectly estimated the quantity of product to be ordered. Def. Int. Mot. at 11.

---

[12] Section 8.405-3(b)(2)(iii) of the FAR, in relevant part, provides for:

(iii) Request for Quotation procedures. The ordering activity must provide a RFQ, which includes the statement of work and evaluation criteria (*e.g.*, experience and past performance), to *schedule contractors that offer services that will meet the agency's needs*. The RFQ may be posted to GSA's electronic RFQ system, e-Buy (see 8.402(d)).

48 C.F.R. § 8.405-3(b)(1)(iii) (emphasis added).

Although American Sanitary complains that it is prejudiced, because the BOP disclosed American Sanitary's total price, the disclosure of an awardee's total price typically occurs after contract award under FAR 8.405-3(b)(3),[13] and, in any event, the total contract price may be obtained by a Freedom of Information Act ("FOIA") request. Def. Int. Mot. at 12–13. In sum, the disclosure of an awardee's total price does not prevent a federal agency from re-soliciting a contract. Def. Int. Mot. at 13 (citing *Wildflower Int'l, Ltd. v. United States*, 105 Fed. Cl. 362, 391–92 (2012) (determining that an agency was required to disclose the awardee's winning low bid to other offerors)).

In addition, American Sanitary should be denied equitable relief, because, under the "unclean hands" doctrine, equitable relief cannot be granted to a party "tainted with inequitableness," *NKF Eng'g v. United States*, 9 Cl. Ct. 585, 589–90 (1986), and American Sanitary acted in bad faith by remaining silent when it knew the Solicitation's quantity estimates were incorrect. Def. Int. Mot. at 14–15. Finally, American Sanitary's argument that Native Green's products were not on its GSA Schedule Contract at the time of contract award is in bad faith, because American Sanitary knows that a product may be listed on a contractor's schedule and still not be listed on the GSA Advantage! website. Def. Int. Mot. at 15–16.

### 4. Plaintiff's Response To The Government's And Defendant-Intervenor's Motions For Judgment On The Administrative Record.

The BOP's cancellation of the Solicitation and American Sanitary's contract award for "quantity estimation errors" was unreasonable, because the estimates had nothing to do with the evaluative criteria for selecting the lowest quoted price. Pl. Resp. at 5. Whether the correctional facilities' requirements were greater than the estimates in the Solicitation was irrelevant to the selection process, because the award was based on the offeror that provided the most potent detergent at the lowest price. Pl. Resp. at 5–6.

Regarding Native Green's contention that its products appeared on the GSA Schedule Contract, but not on the GSA Advantage! website, American Sanitary argues that Native Green was "required" to list all products on the schedule *and* on GSA Advantage!; but, Native Green's products were not listed on GSA Advantage! until well after American Sanitary filed the March 17, 2017 Complaint. Pl. Resp. 9–10.

In any event, the BOP violated 4 C.F.R. § 21.3(a) requiring that a federal agency "shall immediately give notice of the [GAO] protest to the contractor if award has been made." Pl. Resp. at 12. The BOP's mistake resulted in American Sanitary not intervening in Native Green's December 15, 2016 bid protest, to rebut Native Green's erroneous

---

[13] FAR 8.405-3(b)(3) provides that "[a]fter award, ordering activities should provide timely notification to unsuccessful offerors. If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided." 48 C.F.R. § 8.405-3(b)(3).

claims. Pl. Resp. at 12–13. And, in a re-solicitation, Native Green will have a prejudicial competitive advantage, as it knows the lowest price quote for a five and a half year period, and Native Green can ascertain American Sanitary's price per pound and undercut American Sanitary's probable bid. Pl. Resp. at 13.

As for the re-solicitation, allowing Native Green to better amortize start-up costs, American Sanitary also will need to do the same, so both companies are in the same position. Pl. Resp. at 14. And, neither the Government nor Native Green has made the case that injunctive relief is not appropriate. Pl. Resp. at 15.

### 5. The Government's Reply.

Since the estimates in the Solicitation directly impacted the prices offered by the offerors, the corrective action by the BOP is reasonable. Gov't Reply at 2–4. Although American Sanitary dismisses the error in the Solicitation as no more than a "reference guide," this directly impacted the prices received by the BOP. Gov't Reply at 2.

The fact that Native Green's products were not posted on the GSA Advantage! website within a certain timeframe is irrelevant, because the Solicitation did not include any such requirement. Gov't Reply at 5. Whether American Sanitary received timely notice of Native Green's December 15, 2016 bid protest is also irrelevant, because Native Green's December 15, 2016 GAO protest was dismissed as moot as soon as the BOP announced its intention to take corrective action. Gov't Reply at 5.

As such, American Sanitary is not entitled to injunctive relief, because the balance of harm does not weigh in American Sanitary's favor, since the company will have an opportunity to bid on the re-solicitation. Gov't Reply at 6. And, to the extent that American Sanitary is competitively harmed by the disclosure of its bid price for the BPA award, this harm is outweighed by the BOP's interest in issuing a correct estimate of the products required to maximize any available discount. Gov't Reply at 6.

### 6. The Defendant-Intervenor's Reply.

Native Green adds that the underestimated quantities in the Solicitation resulted in a "significant discrepancy" between the BOP's actual requirements and the quantities stated in the Solicitation, so that a decision to take corrective action was proper. Def. Int. Reply at 2. The decision to take corrective action does not improperly prejudice American Sanitary, because its offered prices for the four different laundry products have not been disclosed; only the total bottom line price is public, the utility of which is limited, because the estimated quantities will be different in the revised Solicitation and new estimated amounts will have a significant effect on pricing. Def. Int. Reply at 2.

And, American Sanitary's arguments regarding GSA Advantage! are irrelevant, because Native Green has moved to supplement the Administrative Record with evidence that the four solicited products were on Native Green's GSA Schedule Contract prior to the submission of Native Green's bid. Def. Int. Reply at 4.

### 7. The Court' Resolution.

American Sanitary alleges that the BOP's decision to take corrective action and cancel both the Solicitation and American Sanitary's contract award was arbitrary, capricious, and contrary to law. Compl. ¶¶ 28–29.

Contracting officials "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Thus, as a matter of law, if a CO's decision reflects "rational reasoning and consideration of relevant factors," the court is required to defer to the CO's decision, even if it is one the court would have determined differently. *See Savantage*, 595 F.3d at 1286 ("[W]e must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors"); *see also Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's [procurement decision], the court should stay its hand even though it might, as an original proposition, have reached a different conclusion [.]").

In this case, the CO explained in writing that the BOP took corrective action to ensure that the Solicitation accurately reflected the requirements of the agency. AR Tab 17, at 435. The Solicitation, as originally issued on September 9, 2016, included a "Schedule Of Supplies/Services," that provided a table with estimated quantities of each laundry product in pounds for the base year and four one-year options. AR Tab 4, at 21–24. But, when the CO estimated those quantities, he underestimated the BOP's actual requirements in pounds; and assumed each case weighed two pounds, when each case actually weighed between five and sixteen pounds. AR Tab 2, at 14; *see also* AR Tab 7, at 213–19 (American Sanitary's quote, evidencing that product cases weighed twelve pounds); AR Tab 8, at 350–58 (Native Green's quote, evidencing that product cases weighed sixteen pounds). The BOP's actual requirements were significantly greater than the Solicitation estimates. AR Tab 3, at 15. The BOP, however, did not become aware of this problem until Native Green filed the December 15, 2016 GAO post-award protest. AR Tab 2, at 13–14.

American Sanitary argues that award was to be made based on the offerors' price per ounce, and that the estimated amounts in the Solicitation did not affect the contract award. Pl. Mot. at 14–15. But, the BOP's estimates had a material effect on the price quotes that the BOP received. If the BOP estimated that it would order more detergent than stated in the Solicitation, potential offerors could take advantage of economies of scale to quote a lower price per ounce. The Solicitation also required offerors to install new detergent dispensers at all of the BOP's 122 facilities. AR Tab 4, at 47 ("The contractor will provide . . . [n]ew dispensing equipment [within] six (6) months from date of award."). Potential offerors, however, could better amortize such costs, and quote a lower price per ounce, if the BOP estimated it would require a greater quantity of detergent. The CO's decision to cancel the award and resolicit the contract, so that that the Solicitation better reflected the BOP's actual requirements, was reasonable. *See Honeywell*, 870 F.2d at 648.

15

In the alternative, American Sanitary argues that Native Green was not prejudiced by the December 1, 2016 contract award, because Native Green was not technically compliant and therefore ineligible for award. Pl. Resp. at 8. In this case, however, the BOP took corrective action because the Solicitation did not accurately estimate the BOP's requirements, not because of prejudice suffered by the offerors. *See, e.g.*, *MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525, 533 n.5 (2016) ("The considerations brought to bear when it is the agency's own procurement needs that prompt corrective action are fundamentally different from a situation in which a competitor alleges that corrective action is warranted by potential prejudice to it."). As such, whether Native Green was eligible for award is not relevant to the court's determination that the BOP's corrective action was reasonable under the circumstances.

It is true that the BOP failed to timely notify American Sanitary of Native Green's December 15, 2016 GAO bid protest. AR Tab 2, at 13–14. But, Native Green's protest was relevant only in that alerted the BOP to the Solicitation's error. Therefore, the GAO was not required to reach the merits of Native Green's bid protest, and dismissed the protest as "academic," after the BOP announced its intention to take corrective action. AR Tab 21, at 449. As such, whether American Sanitary was deprived of a chance to intervene in that protest is not relevant to whether the BOP's decision to take corrective action was reasonable.

It is also true that the BOP disclosed American Sanitary's total contract price of $11,908,882.50 to Native Green, when the BOP informed Native Green that the contract was awarded to American Sanitary. AR Tab 27, at 554. But, the overall contract price is routinely announced in award decisions, and, as the United States Court of Appeals for the Federal Circuit has observed, "an offeror's participation in the procurement process involves some acceptance of risk" that the offeror's price will be disclosed. *Sys. Application*, 691 F.3d at 1383.[14] The disclosure of this price cannot, by itself, render the BOP's decision to take corrective action unreasonable; otherwise, agencies would be barred from taking corrective action whenever price is shared with potential bidders. Moreover, the calculated total contract price may vary significantly during the re-solicitation, because the estimated quantities provided by the BOP will be significantly higher. Therefore, the court has determined that the BOP's disclosure of American Sanitary's total contract price does not bar the BOP from taking corrective action under the circumstances in this case.

---

[14] The United States Court of Appeals for the District Of Columbia Circuit has observed that the total contract price paid by the Government is "routinely made public" under Freedom of Information Act requests that routinely inform citizens "what their government is up to." *McDonnell Douglas Corp. v Dept. of the Air Force*, 375 F.3d 1182, 1193 (D.C. Cir. 2004) (quoting JAMES T. REILLY, 1 FEDERAL INFORMATION DISCLOSURE § 14.84 (3d ed. 2004)).

Nevertheless, the BOP should prepare the re-solicitation to ameliorate any competitive injury suffered by American Sanitary as a result of the BOP's disclosure of the total contract price.[15]

### E. The Parties' Motions To Supplement The Administrative Record.

Both Native Green and American Sanitary request that the court supplement the Administrative Record to include additional documents relating to Native Green's GSA Schedule Contract. Def. Int. Mot. Supp. at 1; Pl. Mot. Supp. at 1.

Although the court recognizes the need for an adequate record during judicial review, the parties' ability to supplement the Administrative Record is limited. The Supreme Court has stated that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based *on the record the agency presents to the reviewing court.*" *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (emphasis added). The purpose of limiting review to the record before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review." *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). Therefore, supplementation of the record should be limited to cases in which "the omission of extra-record evidence precludes effective judicial review." *Murakami*, 46 Fed. Cl. at 735.

The issue before the court is to decide whether the BOP acted within its discretion when it took corrective action. The court, however, was able to adjudicate this issue based on the Administrative Record, so there is no need to supplement the Administrative Record. Therefore, the court denies Native Green's May 12, 2017 Motion To Supplement The Administrative Record and American Sanitary's June 6, 2017 Motion To Supplement The Administrative Record.

---

[15] For example, disclosure of Native Green's total contract price may be warranted, at the time the corrected Solicitation shall issue, so that no offeror is at a competitive disadvantage. *See DGS Contract Serv. v. United States*, 43 Fed. Cl. 227, 238 (1999) ("[W]hen an unsuccessful offeror lawfully obtains source selection information, such as a competitors' prices and technical scores, and the agency subsequently properly reopens negotiations, the agency may disclose similar information to all the competitors to eliminate any competitive advantage obtained.").

## IV.     CONCLUSION.

For these reasons, American Sanitary's April 24, 2017 Motion For Judgment On The Administrative Record is denied. The Government's May 19, 2017 Cross-Motion For Judgment On The Administrative Record is granted. Native Green's May 12, 2017 Motion To Supplement The Administrative Record and American Sanitary's June 6, 2017 Motion To Supplement The Administrative Record are denied. All other pending motions are dismissed as moot.

Accordingly, the clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**